# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 20-1653V
UNPUBLISHED

| | |
|---|---|
| BRUCE EDMONDS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: March 7, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA, for petitioner.*

*Katherine Carr Esposito, U.S. Department of Justice, Washington, DC, for respondent.*

## **FINDINGS OF FACT**[1]

On November 23, 2020, Bruce Edmonds filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). An amended petitioner was filed on October 12, 2023. ECF No. 61. Petitioner alleges that he suffered Parsonage Turner Syndrome ("PTS") (also referred to as brachial neuritis) caused-in-fact by a pneumococcal conjugate vaccine administered on November 28, 2017. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner has established situs of vaccination in his right arm, as alleged.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Relevant Procedural History

Petitioner filed this claim on November 23, 2020, seeking compensation for PTS. ECF No. 1. Respondent filed his Rule 4(c) Report on July 27, 2023, contesting compensation. Respondent's Rule 4(c) Report ("Report"), ECF No. 52, at 11-12. Respondent argues that Petitioner cannot establish a causation-in-fact claim and alleging a right shoulder injury despite evidence of a left-shoulder vaccination. *Id.* On October 12, 2023, Petitioner filed a motion for a ruling on the record. Petitioner's Motion for Ruling on the Record with regard to Site of Vaccine Injection ("Mot."), ECF No. 62. Respondent filed a response on October 24, 2023. Response to Motion for Ruling on the Record ("Response"), ECF No. 63. Petitioner filed a reply on October 31, 2023. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 64.

## II.    Petitioner's Medical Records

On November 28, 2017, Petitioner received a pneumococcal vaccine. Ex. 25 at 6. The handwritten vaccination record states "L delt", indicating it was given in Petitioner's left shoulder. *Id*. On December 1, 2017, Petitioner contacted his primary care physician, Dr. Robert Carter, stating he "had a pneumonia shot" and reported pain in his arm. Ex. 19 at 1. He again reported pain on December 5, 2017 "after pneumonia shot." *Id.* at 2.

Petitioner saw orthopedic surgeon Dr. Jeffery Shapiro on December 11, 2017, who noted that Petitioner was "two weeks status-post pneumococcal vaccine in his right shoulder." Ex. 4 at 27. He reported an adverse reaction that included pain, numbness, and full, but guarded, range of motion. *Id.*

On December 21, 2017, Petitioner again reported right arm pain that persisted "ever since he had the pneumonia vaccine about 3 weeks ago." Ex. 2 at 81. vaccine. Ex. 7 at 5. He was referred to a neurologist and underwent an electrocardiogram on January 8, 2018. Ex. 3 at 36-37. The record notes that Petitioner "suffered from persistent pain in the right arm after his pneumovax." *Id.*

Petitioner saw neurologist Bruce Silverman, D.O., for pain and weakness of his right arm on January 11, 2018. Ex. 7 at 41. He reported after his pneumonia vaccine, he experienced some initial soreness, but on the third day felt severe pain in his right arm. *Id.* Petitioner was assessed with PTS, cervical radiculopathy, and cervical somatic dysfunction. *Id.* at 43. A cervical EMG on February 21, 2018, was consistent with PTS. Ex. 11 at 4; Ex. 2 at 117. An MRI on February 24, 2018, was also consistent with PTS, as well as brachial neuritis. Ex. 14 at 5.

2

Petitioner continued to reported problems with his right arm throughout 2018. *See* Ex. 12 at 10-13 (reporting during an oncology evaluation that he received a pneumonia shot that led to severe pain in his right shoulder and arm). Additionally, Dr. Silverman noted continued numbness as of June 12, 2018, but ninety percent improved strength. Ex. 7 at 27. By February 14, 2019, his plexopathy symptoms were resolved, but for some hypersensitivity of the right radial nerve distribution of the right hand. Ex. 7 at 16.

### III.    Affidavit Evidence

Petitioner submitted an affidavit in support of his claim, describing the vaccination and his course of treatment. Ex. 45. He states that he is left-handed and "instinctively" has vaccines administered in his right, non-dominant, arm. Ex. 45 at 1-2. Further, the pneumonia vaccine was injected in his right shoulder. *Id.* Cathleen Edmonds, Petitioner's wife, also submitted an affidavit. Ex. 46. She states that Petitioner first complained of right shoulder pain "where he had the vaccination". Ex. 46 at 1. 46.

### IV.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.    Petitioner Likely Received the Vaccine in his Right Shoulder

Respondent contends that, although Petitioner alleges a right shoulder injury, the vaccine records indicate that the vaccine was received in his left arm. Report at 12 (citing Ex. 25 at 6). Respondent's reading of the administration record is literally correct, but his argument does not take into account the totality of the evidence, which soundly supports a *right-side* vaccine administration finding.

The overall medical records establish that Petitioner consistently and repeatedly reported right shoulder pain following a pneumococcal vaccine received *in that shoulder*. *See, e.g.*, Ex. 4 at 17 (record stating that Petitioner reported right shoulder pain "since a

pneumonia vaccine three weeks earlier); Ex. 3 at 36-37 (reporting persistent pain in Petitioner's right arm after his pneumovax); Ex. 12 at 10-13 (reporting during an oncology evaluation that he received a pneumonia shot that led to severe pain in his right shoulder and arm). Additionally, Petitioner's affidavits provide corroborating evidence. For example, he stated that as a left-handed person, he instinctively has vaccine administered in his right, non-dominant, arm. Ex. 45 at 2.

The only contrary evidence is found in the administration record itself. While that document is both the first contemporaneous item of evidence relevant to this fact dispute, it is uncorroborated by anything else in the overall record – and I do not give it great weight, since it is consistently observed in cases in the Program that administration records are frequently incorrect, or are completed based on assumptions about what arm will receive the vaccine in most cases – but without taking into account the relevant petitioner's circumstances. *See, e.g., Schoenborn v. Sec'y of Health & Hum. Servs.*, No. 21-0227V, 2024 WL 1342999, at *6 (Fed. Cl. Feb. 28, 2024) (noting that it is repeatedly observed in Program cases that "it is not unusual for the information regarding site of vaccination in computerized systems to be incorrect") (internal citations omitted); *Cook v. Sec'y of Health & Hum. Servs.*, No. 21-1029V, 2022 WL 3012304, at *4 (Fed. Cl. June 29, 2022) (noting that information regarding site of vaccination in computerized systems is not always correct and often uses a 'dropdown' menu which may not be updated each time a separate vaccine is administered to a different individual).

## Conclusion

In view of the evidence of record, I find that there is preponderant evidence that Petitioner received the pneumococcal vaccine on November 28, 2017 in his right arm.

This does not, of course, resolve Petitioner's underlying entitlement to damages. There is no brachial neuritis Table claim for the pneumococcal vaccine, and this matter has been pending in SPU for a long time. As a result, the parties will be afforded a short additional time to resolve the claim (and it is unlikely damages are high). To that end, **the parties shall file a final settlement status report by April 30, 2025.** The matter will thereafter be transferred out of SPU if not resolved.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master